### MORGAN v. HILLYER DEUTCH-EDWARDS, Inc.
### No. 1007.

Court of Appeal of Louisiana. First Circuit.
June 8, 1932.

Julius T. Long, of Shreveport, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

MOUTON, J.

Plaintiff alleges that on July 10, 1930, while in the employ of defendant company, a load of lumber fell from a truck, with great force and weight, striking him on the chest and abdomen, permanently rupturing his internal organs, the lining and walls of his stomach, causing his stomach and intestines to drop

down to such an extent that blood passed therefrom for about a week, and also impairing his heart and kidneys, for which he is demanding compensation at $13.65 per week for 400 weeks.

His demand against defendant company was rejected, and he appeals.

In explaining how he was hurt, plaintiff testifies that the load of lumber came running through the surfacer, and, as his fellow workman, Bill Sigmore, took the prop from under it, he (plaintiff) was caught in the chest and stomach, that he suffered awful pains, and that the bruises he received caused blood to pass from his bowels during two weeks or more.

Mr. Duett testifies that at plaintiff's request he replaced him at his work for a while, and says that he worked in his place about 10 or 15 minutes when plaintiff returned and told him "he was all right."

Duett says plaintiff told him a load of lumber had been dumped on him, but did not say where he had been hurt, and did not say he had been injured in the stomach; worked with plaintiff after that and who never referred to his injury, and that he did not notice any difference in plaintiff's work after the accident, although at times it was hard work.

A day or two after the accident, plaintiff says he saw Dr. Waller, who, he testifies, examined him, would pay no attention to his statement that his stomach was hurting him, and wanted to restrict his examination to his chest. He says Dr. Waller knew of his blood passing through, as he had taken specimens of it.

Mrs. Morgan, plaintiff's wife, testifies that Dr. Waller, who she says was then a physician of defendant, said that plaintiff had lost ten pounds the first week he was hurt. It is therefore evident that plaintiff in thus referring to Dr. Waller's statements, which he claims were made by that physician, desired to have the benefit of his testimony in reference to the alleged injury.

█ The district judge in his opinion says Dr. Waller had left this state, and that his testimony was not taken. If he had left Louisiana, it would not have been impossible for plaintiff to have obtained his testimony by commission if he so desired. Because Dr. Waller's testimony was not taken, plaintiff's counsel contends, if we correctly appreciate his position, that the absence of his evidence must be taken as a presumption that it would have been against the contentions of the defendant company. The record shows that Dr. Gray and Dr. Cather, physicians in the service of defendant company, were called as witnesses to testify in the case, and nothing compelled the defendant to also call Dr. Waller to testify.

No doubt plaintiff, as is shown by his testimony, was desirous of having the benefit of Dr. Waller's evidence, and, having failed to secure his evidence, the lack of this evidence is not to be construed as militating against the contentions of defendant company.

As hereinabove stated, plaintiff in his testimony says that, when he was hurt, Bill Sigmore, it seems, was an employee of defendant company at that time, was thereafter dismissed from service, and did not testify in the case. Because of his absence, counsel for plaintiff indicates by his argument that defendant company is responsible for his failure to testify, and that this is a material circumstance that should be considered in the chain of evidence as being against the defendant company.

There is not the slightest or remotest proof to indicate that he was spirited away by defendant company, and any inference to be drawn from his absence detrimental to defendant company would have to be based on a bare suspicion, not connected with any fact or circumstance to give it any value, and which is not to be taken into account in the consideration of the facts necessary to a proper solution of this litigation. This diversion from the main issue was forced upon us by the contentions advanced by counsel for plaintiff in reference to the lack of any testimony from Dr. Waller and Sigmore and the inference which he contends should be drawn therefrom.

█ We shall now refer to the consideration of testimony of Drs. Gray and Cather, physicians who were employed by defendant to look after its medical and accident cases. Plaintiff was treated by these physicians in October, about three months after the alleged accident for indigestion or a "little diarrhea," and some injury to his arm. Neither of these physicians had any record in their office showing that they ever knew until the filing of plaintiff's suit that he had suffered any injury to his chest or stomach.

Wayne Terrell, who was superintendent of the dimension plant where plaintiff was working at the alleged time of the accident, and under whom he was rendering his services, says plaintiff never told him, and that he never heard on July 10 or 11, 1930, the date of the alleged accident, that plaintiff had ever sustained any accidental injury to his abdomen; that he did complain of an injury, but that was "on his elbow."

It is rather singular that, if plaintiff suffered the injuries described in his petition or that he immediately experienced, after the accident, "awful pains," he would have said nothing to his fellow workman, Duett, of where he had been injured, and would have returned to his work in about 10 or 15 minutes, stating that he was "all right." In addition to this, that he would have refrained

from saying anything to Terrell, his superintendent, about the injury, and again, over all of that, would have been equally reticent on the subject to Drs. Gray and Cather, physicians of defendant company, to whom such cases were usually reported.

Counsel for plaintiff says that this character of testimony is negative, and that the number of witnesses gives no weight to it. It is not negative in the sense of being a denial testimony of what plaintiff said, but shows his conduct under circumstances, which, to say the least, is quite unusual, as men ordinarily will give expression of their sufferings when they are the result of unexpected and serious accidents.

In addition to the conduct of plaintiff immediately after the alleged accident, and his reticence in reference thereto, the pay roll of defendant company, and the correctness of which is not disputed, shows that plaintiff continued his work on the 10th of July, as he is credited thereon with 10 hours' work for that day; and that the next day he again worked 9 hours. This actual work immediately after the alleged accident and the day following for 9 hours are facts from which the court may be entitled to draw some inference, and it is therefore not illogical for us to say that, if the injury had been of the character described in plaintiff's petition, or would have entailed immediate "awful pains," as testified to by him, plaintiff would have desisted from his work, and would not have continued with his work the whole of the next day and the day following.

It further appears from the pay roll that plaintiff worked on a daily average of about 8 hours in the following months of August and September, 1930; that he complained of the accident to his stomach to Dr. Gray or Cather for the first time in the month of October, 1930.

If he had suffered the injury of which he complains it would be extremely unusual for the complaint to have been made such a long time after the accident had occurred. On this subject we have, however, the testimony of Dr. Cassidy, expert witness for plaintiff.

In response to a question on cross-examination by counsel for defendant company to the allegation of plaintiff that the ligaments of his stomach had been stretched or torn, Dr. Cassidy said he would certainly not have been able to work for some time thereafter; and, when again asked if a day or two after the accident he could continue doing his work handling lumber, his answer was as follows: "No he could not have been able to do that kind of work within a day or two after the accident, if he did he would be a man who could stand a great deal of agony and still work."

The word "agony," usually expressive of intense pain is somewhat strong and to have suffered such pain with the equanimity displayed by plaintiff immediately after such an accident and subsequently thereto would not perhaps have been entirely impossible to him, but certainly would have been extremely improbable. Not only did plaintiff manifest this calm composure soon after the alleged accident, but continued his work the day after, and then for over two consecutive months before registering his complaint and claiming any compensation.

Dr. Rand, sworn by defendant, made an X-ray examination of the plaintiff. He found plaintiff with a drooping colon, usually present in thin individuals of plaintiff's type. This condition is ordinarily the result of a congenital defect exaggerated by constipation, this expert testifies.

Asked if a trauma could have suddenly caused that condition in plaintiff, he replied: "He would have been dead in a few days"; and then, in response to the question as to whether plaintiff could have returned to work a day or two after the accident, and worked three or four months regularly thereafter, he says: "I think it is impossible." This physician concludes by saying that he found no connection whatsoever between the alleged injury and plaintiff's condition at the time of his examination.

Dr. Cassidy, expert for plaintiff, was asked if this drooping of the stomach or abdominal contents is not frequently found in thin and weak men without any history of accidental injury, to which he said: "Yes, I would say that we find more patients in men that don't give history of an accident." This opinion of Dr. Cassidy is in keeping with that of Dr. Rand, expert for defendant, that this trouble is ordinarily congenital and is not the result of trauma. It might have been congenital, but was not brought about by a trauma for the reasons hereinabove given in our analysis of the evidence, which need not be repeated.

Plaintiff, in his testimony, is positive that prior to his alleged accident he had never suffered with his intestinal organs. In answer to that question about his prior condition, he testified as follows: "No sir, never went to a doctor since I was a kid." The testimony of his wife, Mrs. Morgan, on that subject, is that there never was anything wrong with her husband prior to July 10, 1930, except with his arm.

Drs. Gray and Cather examined plaintiff in October, over two months after the alleged accident, and found he was then suffering with his elbow and indigestion, and perhaps a "little diarrhea," but was not afflicted with a drooping stomach or bowels, and of which he made no mention.

It is therefore clear, according to plaintiff's testimony and that of his wife, that he was in perfect health when the alleged ac-

cident occurred, and that even as late as October, according to the testimony of Drs. Gray and Cather, the only trouble he had was indigestion, something to his elbow, and perhaps diarrhea.

The conclusion from those facts must therefore be that, if his trouble was congenital, this condition developed after the alleged accident of July 10, 1930, and that he could not have been affected therewith prior to that date. As it must be taken that he had no such pre-existing trouble at that time, there could have been no activating or augmenting of a diseased condition which did not exist. This conclusion disposes of the contention of plaintiff that he should recover for the aggravation or acceleration of a prior trouble.

Plaintiff has failed to prove that the injury which he alleges he suffered with was the result of a trauma or accident of which he complains, or that he had, prior to the alleged accident, a disease or trouble which could have been activated, augmented, or aggravated by any such accident.

His demand was therefore properly rejected.

Judgment affirmed.