## MUSTACK v. UNION INDEMNITY CO.

### No. 1105.

Court of Appeal of Louisiana. First Circuit.
April 17, 1933.

C. V. Pattison, of Lake Charles, for appellant.

Fern M. Wood, of Leesville, for appellee.

**ELLIOTT, Judge.**

Jimmie Mustack alleges that the Union Indemnity Company is his obligor in the matter of the compensation insurance furnished by James Stanton Construction Company; that as one of the employees of the said construction company, and while working in the construction of a highway and endeavoring to lift a large piece of machinery known as the separator-grader, he sustained a hernia, thereby producing in himself a permanent, total disability to do work of any reasonable character. He claims compensation of the Union Indemnity Company, on account of its said

obligation, in the sum of 65 per cent. of his daily wage of $2 for a period not exceeding four hundred weeks.

Union Indemnity Company, for answer, admits that it carries the compensation insurance of the James Stanton Construction Company as alleged, but denies liability to the plaintiff.

It denies that the plaintiff sustained the hernia, which he has, while in the employment of the said company, but in the alternative, and in case it be found that he did sustain the hernia while working therefor, it then, in that event, alleges that said injury does not prevent him from performing labor, that his disability on said account is not total, but only partial, and that even this will soon be gone.

The trial resulted in judgment in favor of plaintiff as prayed for. Defendant has appealed.

The case is one of fact. Part of the testimony is conflicting, but there is no dispute concerning what we find to be important and governing facts, and on which we will predicate our opinion and decree.

The plaintiff alleges that he was injured on March 27, 1932. Now, if he was injured as he alleges and his injury produced in him a total disability, it cannot be that he continued working the balance of the same day, doing the same work; nor could he have continued working the next, nor the second, nor third day thereafter. If his averment was true, he was incapacitated.

There were some remarks made during his examination, and there is something said in his brief, the purport of which is, that some of the statements he is claimed to have made as to what he was lifting when injured was due to inability on his part to properly explain himself in the English language. We have examined the answers he gave in response to questions asked him. His answers show that he is married, lives in the town of De Ridder, and has lived in that vicinity all his life. The evidence does not show his age, but he has worked for various concerns, doing manual labor, mixing with the people. The oath attached to his petition is signed by him in a fairly good hand, and he did not put forward any claim that he did not understand the language in which he was giving his testimony. It is our impression that the plaintiff understands the English language all right, has no doubt spoken it all his life, and no reason exists for supposing him unable to express himself in English correctly.

It is plain that, if he was injured, it must have been on March 27, 1932. The evidence does not show the hour he claims it took place, but we draw from remarks in the testimony that it was during the evening.

The important question is whether he ac-

tually sustained a hernia as he claims to have done while working for the James Stanton Construction Company in the construction of the highway. It is not so important what he was lifting at the time, if the lifting produced the hernia.

Plaintiff admits that he worked all day March 27, 1932, doing, as we understand it, the work he was employed to do until quitting time that evening.

On his examination in chief, in response to questions asked him by his counsel, he stated that he did not work the next day; but subsequently, on cross-examination, he admitted that he had worked four or five days following his injury; later, however, during his cross-examination, he corrected himself, saying that he did not work after his injury. But as against his testimony that he did not work the next day, nor the next day, we find the testimony of Charlie Waits against him on the subject. This witness Waits was plaintiff's witness. Waits, in narrating a conversation between him and the plaintiff next morning, which was the 28th, at the place on the road where they were at work at the time of the alleged injury, says: "I can say what he told me that morning. He says: I hurt myself lifting that thing. Of course, he didn't know the name of it I don't know the name of it, myself, I know they had it to lift. And I says 'Where?' And he says, 'Right there.' And he says a little something about that long peeped out last night. And I says: 'You ought to tell your foreman and see the doctor.' And he says: 'I believe I will.' And him and two or maybe one of those negroes was trying to work together on the forms, and so then the foreman came and I guess he told him."

This was the morning of the 28th. According to Waits, the plaintiff had returned to work next morning, and was working on forms when Waits came up and the conversation which he narrated ensued. The other witnesses against him on the subject were called by the defendant.

G. C. Pritchard, the foreman of the construction company, testified that he kept an account of the days worked by the crew of which plaintiff was a member. Reading from a memorandum, he says that plaintiff worked March 28th, the 29th, and 31st. Two other witnesses in addition to the foreman testified that plaintiff worked after the time he claims to have been injured. One says he worked with the plaintiff the next day after the 27th, and another says he worked with him a couple of days after that time. Each said that plaintiff, while working with them, told them that he had been injured. One claims that he said it was the previous day, and the other claims that he said it was two days before.

Other testimony shows that, after talking with Pitchard, the foreman, during the morn-

ing of March 28th, about his injury, he consulted the timekeeper. The timekeeper gave him a note to Dr. Reid, and that same morning he called on and was examined by Dr. Reid and found with the hernia, which it is agreed he has. Therefore, if plaintiff did work on the road after the morning of the 28th, it must have been after he had consulted Dr. Reid. Plaintiff alleges and testifies that he was injured while endeavoring to lift the separator-grader. Pritchard and two other witnesses testified that he told them he injured himself toting forms.

The forms referred to were made of cement and weighed each a hundred pounds or more.

Three other witnesses say he told them that he hurt himself trying to lift the turntable. It is this testimony that inclines us to give close attention to remarks that his understanding of the English language may not have been sufficient to enable him to express himself properly. The turntable was about two hundred yards distant from where he was at work. It was the property of another contractor. It weighed five or six tons, and was ordinarily moved by a truck. It was not lifted. Nobody tried to do that; and we are satisfied that plaintiff did not hurt himself in that way.

Another witness testifies that plaintiff told him he hurt himself lifting the subgrader. The testimony on the subject was all received without objection; so it matters not whether it was while lifting the separator grader, the subgrader, or the cement forms, if the injury occurred lifting any of these things he is entitled to recover.

The evidence shows that eight or ten men, perhaps more, were working for James Stanton Construction Company as part of the crew of which plaintiff was a member on March 27, 1932; and, according to plaintiff's testimony, several of them were helping him lift at the time he sustained the hernia. A number were called and questioned about the matter, and not a witness, except the plaintiff himself, testified that he had lifted or helped lift anything. They admitted that plaintiff was there; but none claimed to have helped or assisted in doing anything at which he claimed to have been, or at which he could have been, hurt, in the way alleged in his petition. Plaintiff is the only witness to his alleged injury sustained while lifting in the work mentioned. Plaintiff testifies that while lifting he felt a pain in his side; it was a hard pain, but he did not know what it was, and kept on working, saying nothing to anybody about it; that he continued to work, doing the work he was employed to do the balance of the evening until quitting time. Just how long elapsed before quitting time the evidence does not indicate; but, when quitting time came, he says he got into a truck and went home. It seems a proper inference from what he says about going home that he was not the only person in the truck; but, if there was anybody else, and we think it more than likely that there was, although in pain, as the result of recent injury, he did not say anything about it to anybody in the truck. He stated that he went home; but his further testimony is to the effect that he did not go home, but, on account of his pain, stopped when he got to his mother's house and went to bed. His mother sent for his wife and sister. His mother, wife, and sister made a poultice of hot salt and water and applied it to the place where he felt pain. The next morning the pain was gone. He got into a truck next morning and returned at the usual hour to his work on the road, and was at work when Pritchard came up.

Mrs. Natallie, plaintiff's sister, corroborates him, saying that she got word that evening from her mother that he had come home hurt; that her mother and herself made a poultice of salt and warm water and applied it to his abdomen.

We notice that Mrs. Natallie does not say how long she remained with the plaintiff; and she does not speak of his wife being there, that plaintiff's wife and mother were not called as witnesses in his behalf, and that he returned to work without consulting a physician.

■ Plaintiff's failure to complain of injury at the time he claims he was injured and the established fact that he continued to work as usual until quitting time, his continued failure to complain to fellow laborers that evening while going home, his return the next morning at the usual hour and resumption of work until Pritchard, his foreman, came, inclines us so strongly against plaintiff's contentions that we feel he has not established a right to recover.

In the case Morgan v. Hillyer-Deutsch-Edwards, Inc., 142 So. 180, 181, recently decided by this court, the following language, which we quote from the opinion, is very appropriate to the present case:

"It is rather singular that if plaintiff suffered the injuries described in his petition, or that he immediately experienced after the accident, 'awful pains,' he would have said nothing to his fellow workman, Duett, of where he had been injured, and would have returned to his work in about 10 or 15 minutes, stating that he was 'all right.' In addition to this, that he would have refrained from saying anything to Terrell, his superintendent, about the injury, and again, over all of that, would have been equally reticent on the subject to Drs. Gray and Cather, physicians of defendant company, to whom such cases were usually reported.

"Counsel for plaintiff says that this char-

acter of testimony is negative, and that the number of witnesses gives no weight to it. It is not negative in the sense of being a denial testimony of what plaintiff said, but shows his conduct under circumstances, which, to say the least, is quite unusual, as men ordinarily will give expression of their sufferings when they are the result of unexpected and serious accidents."

The opinion also speaks of the fact that Morgan continued to work as usual, etc.

The Legislature (Act No. 85 of 1926) put into the Employers' Liability Act of this state a provision on the subject of hernia, as follows: "Hernia is a disease which ordinarily develops gradually, being very rarely the result of an accident. Where there is real traumatic hernia resulting from the application of force directly to the abdominal wall, either puncturing or tearing the wall, compensation will be allowed. All other cases will be considered as of slow development and not compensable, being a disease rather than an accidental injury; unless conclusive proof is offered that the hernia was immediately caused by such sudden effort or severe strain, first, that the descent of the hernia immediately following the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employee was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within forty-eight hours after the occurrence of the hernia; fifth, that there was such physical distress that the attendance of a licensed physician was required within forty-eight hours after the occurrence of the hernia," etc.

The law on the subject was amended in 1928 (No. 242), and the above provision left out; but the enacted provisions concerning the symptoms and severity of a sudden traumatic hernia show that same was regarded by the Legislature as the common and usual result of such an injury.

On the subject of proof, the Employers' Liability Act, § 18, subd. 4 (amended Act No. 85 of 1926) provides: "And all compensation payments provided for in this act, shall mean and be defined to be for injuries and only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."

Section 38 (amended Act No. 38 of 1918) provides that the word "'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom. The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."

In this case, according to plaintiff's testimony and that of the other witnesses present at the time of the alleged injury, the injury was concealed so that nobody present, or with plaintiff on his way home, knew that anything had happened to him while lifting on the work.

It seems to us that, if plaintiff had suddenly sustained a hernia while assisting a number of other men lift something, the resulting pain and unusual feeling would have caused him involuntarily, immediately, then and there, to say to those present that something had happened to him while lifting. Then again, at least ordinarily, according to the medical testimony on the subject, plaintiff would have been in no condition to continue working, and there would have been symptoms due to the shock, such as weakness, pallor of countenance, nausea, etc. None of the witnesses spoke of any symptoms of this kind; and we are satisfied that nothing of the kind occurred at the place where plaintiff was at work.

There is medical testimony on the subject to the effect that a hernia, after the soreness has passed away, if not too large, will not prevent a party from doing light work. In the case of Dixon v. Eula Lumber Company, 6 La. App. 206, the opinion quotes the experience of men who had sustained a hernia as to what kind of work they had done and could do. There is no doubt that men with hernia, not too large, can do light work, but not heavy, manual labor, and they cannot strain nor lift heavy objects. But, even when the hernia is such that light work can be done, that does not mean that such work can be continued until the effect of the shock has subsided and the soreness passed away.

There is no evidence in this case showing what time would ordinarily elapse, after a hernia such as plaintiff has, before the soreness incidental thereto would disappear to the extent that light work could be done, but we are safe in saying that road work such as plaintiff was doing could not be continued the same evening nor the next day, and that is sufficient to defeat plaintiff's claim.

In this case the evidence does not satisfy us that plaintiff sustained the hernia which he has while working for the James Stanton Construction Company. It is our belief that it existed previous to that time, and that in working for them he managed to get by with it.

■ After this opinion had been agreed on by the court and prepared for release, we were presented by counsel for plaintiff, appel-

lee, with a motion to dismiss the appeal on the ground that the affairs of the Union Indemnity Company defendant, appellant, had been placed in the hands of a receiver.

The motion is supported only by the ex parte affidavit of counsel for plaintiff appellee, and there is no showing of which we can take cognizance from any court that would justify us in acting on the motion as presented.

For the reasons stated herein, the judgment appealed from is avoided and set aside, and plaintiff's demand is now rejected.